Filing # 125891949 E-Filed 04/29/2021 06:08:19 PM

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL
CIRCUIT IN AND FOR ST. JOHNS COUNTY, FLORIDA

MICHAEL LYNCH, as
personal representative of
the Estate of EILEEN LYNCH,

    Plaintiff,

    -vs-                        No. _____

LAWRENCE CASLER, a.k.a. LAWRE
CASLER, SUN TOY III, LLC, and
THE HANOVER INSURANCE CO.,

    Defendants.

## COMPLAINT

Plaintiff, MICHAEL LYNCH, as personal representative of the Estate of EILEEN

LYNCH, sues Defendants, LAWRENCE CASLER, a.k.a. LAWRE CASLER, SUN TOY

III, LLC, and THE HANOVER INSURANCE COMPANY, and alleges:

**Count 1**
**Wrongful Death**
<u>**Defendant Lawrence Casler**</u>

**A. Facts**

1.    Lawrence Casler, also known as Lawre Casler, is 65 years old and works

as a licensed yacht captain.

2.    Casler is captain of the *Sun Toy II*, a 75-foot Sunseeker motor yacht.

3.    On November 21, 2020, the yacht is moored just off the coast of north

Florida, near St. Augustine.

4.    On November 21, 2020, Casler invites Eileen Lynch, age 64, to be his guest

on the yacht.

5.      On the afternoon of November 21, 2020, Casler and Lynch have some drinks (alcoholic beverages) before setting out in the yacht's motorized tender, with Casler at the helm.

6.      Around 4:15 p.m., Casler and Lynch are motoring on the Tolomato River in the vicinity of the Usina Bridge and the Vilano Beach Pier.

7.      There is typically a lot of boat traffic in this area and boats are supposed to proceed very slowly.

8.      At one point the attention of the people on the pier is drawn to a small boat whose captain—Casler—is gunning the motor and going much faster than boats are supposed to go in this part of the river, only about a hundred yards from shore.

9.      Casler steers the tender dangerously close to the pier, so close that fishermen on the pier shout to warn him away from their lines. Casler raises his arm and gives the fishermen his middle finger as he speeds by.

10.     Still too close to the pier, Casler tries to turn the tender, but his speed won't let him complete the tight turn he is attempting.

11.     But it's too late to change course, and Casler drives the tender straight into the concrete piling beneath the pier.

12.     Casler slams into the piling with such force that Eileen Lynch is ejected from the tender and is catapulted—headfirst—into the piling.

13.     Eileen is floating in the water but isn't moving. The water around her head is turning pink. The current is taking her out.

14.     Although uninjured, Casler seems shocked and panicked; he fumbles around the tender.

15.     A fisherman jumps in and swims toward Eileen. He manages to grab ahold of Eileen, and begins to swim back toward the pier with his one free arm. But try as he might, he can't make any progress against the current, and he has to let go of Eileen.

2

16.     Then a boat appears, and someone manages to pull Eileen out. Eileen is unconscious and is bleeding badly.

17.     A good Samaritan begins CPR. Police and fire rescue arrive.

18.     Eileen is rushed to a nearby hospital where doctors do everything they can to save her.

19.     But four days later, at Memorial Hospital in Jacksonville, Ms. Eileen Lynch of 933 Rustlewood Lane in Saint Johns, Florida, is pronounced dead.

### B. Jurisdiction and Venue

20.     This is a wrongful-death action for damages that well exceed the circuit court's $30,000 jurisdictional threshold.

21.     Plaintiff, Michael Lynch, is the duly appointed, qualified, and acting personal representative of the estate of Eileen Lynch.

22.     The fatal crash that gave rise to this action took place on the navigable waters of the United States, on the Tolomato River, just a hundred yards or so from the St. Augustine shoreline.

23.     The crash occurred while the Defendant was engaged in the traditional maritime activities of yachting and pleasure-boating.

24.     Because this crash occurred on navigable waters and the crash bears a substantial relationship to traditional maritime activity, this action is governed by the general maritime law.

25.     This action is brought in state court pursuant to the saving-to-suitors clause of section 1333 of title 28 of the United States Code.

### C. Negligence

26.     While Lawrence Casler was operating the yacht's tender, he owed his passenger, Eileen Lynch, a duty of reasonable care.

27.     Casler breached that duty by operating the tender at an unreasonably high speed, by operating the tender too close to the Vilano Pier, by operating the tender in an

3

unsafe manner, including turning it wildly and improperly, by operating the tender while under the influence of alcohol, and by operating the tender in violation of various marine-safety rules, culminating in Casler's crashing the tender into a concrete piling beneath the Vilano Pier, and causing his passenger, Eileen Lynch, to be ejected from the tender and catapulted—headfirst—into the concrete piling.

28.     Under the *Oregon Rule*, because Casler crashed the vessel into a stationary object, he is presumed at fault and he bears the burden of proving absence of fault.

29.     Under the *Pennsylvania Rule*, because Casler was operating the vessel in violation of marine-safety rules intended to prevent collisions and allisions, his actions are presumed to have caused the crash. And under the *Pennsylvania Rule*, that presumption cannot be overcome unless Casler proves that his fault *could not possibly* have been one of the causes of the allision.

### D. Damages

30.     In the crash, Eileen Lynch suffered bodily injury and resulting pain and suffering that caused her to die four days later, on November 25, 2020; the cause of death given in the State of Florida's Certification of Death for Eileen Lynch is "blunt force head trauma" that occurred when "passenger in boat struck pier."

31.     At the time of her death, Eileen Lynch was unmarried. (She had been divorced for some years.)

32.     Other than Eileen Lynch's Estate, the only potential beneficiary of a recovery in this action is Eileen Lynch's daughter, Michelle Lynch, who is completely dependent on Eileen for her requirements of daily living and for her very survival.

33.     As a result of her mother's death, Michelle Lynch has lost everything: She has lost her mother's support and services from the date of the crash until the date of her mother's death, with interest, and future loss of support and services from the date of her mother's death until the end of Michelle's life. Since the crash, and for the rest of her life, Michelle Lynch has suffered and will continue to suffer the loss of her mother's

parental companionship, instruction, and guidance. And the void left by the loss of the most important person in her life has caused and will cause Michelle Lynch mental pain and suffering, mental anguish, and loss of capacity for the enjoyment of life, from the day of the crash, for the rest of Michelle's life. Michelle Lynch has lost and will continue to lose for the rest of her life the amount of her mother's probable net income and the replacement value of her mother's services. And Michelle Lynch has lost the amount of medical and funeral expenses paid for her mother's medical care and her mother's funeral.

34.     As a result of Eileen Lynch's death, Eileen's estate lost her earnings from the date of the crash until the date of Eileen's death, with interest. The estate has also lost and will continue to lose the prospective net accumulations of the estate, and has lost medical and funeral expenses.

### E. Punitive Damages

35.     Punitive damages are warranted in this case because the Defendant's actions (described in the body of this Complaint), including operating a motorized vessel in violation of marine-safety rules, at a dangerously high speed and in a patently reckless manner, while under the influence of alcohol, and while an innocent passenger was present in the vessel, were wanton, willful, or outrageous.

WHEREFORE Plaintiff demands judgment for damages, including punitive damages, against Defendant, and demands a jury trial.

### Count 2
### Wrongful Death
### Defendant Sun Toy III, LLC's Direct Liability

### A. Facts

36.     The Plaintiff incorporates all of the allegations set forth in Count 1, above.

37.     At the time and place of the events described in Count 1, Defendant Sun Toy III, LLC, owned and operated the *Sun Toy II* and its tender.

5

38.     At the time and place of the events described in Count 1, Defendant Sun Toy III, LLC, operated the *Sun Toy II* through Lawrence Casler, the person Sun Toy III, LLC, chose and appointed to captain and operate the vessel for them.

39.     As the owner and operator of the yacht and tender, Defendant Sun Toy III, LLC, owed passengers like Eileen Lynch a duty of reasonable care.

40.     Defendant Sun Toy III, LLC, through the actions of Lawrence Casler, breached its duty of care to Eileen Lynch in the ways described in Count 1, above.

### B. Damages

41.     In the crash, Eileen Lynch suffered bodily injury and resulting pain and suffering that caused her to die four days later, on November 25, 2020; the cause of death given in the State of Florida's Certification of Death for Eileen Lynch is "blunt force head trauma" that occurred when "passenger in boat struck pier."

42.     At the time of her death, Eileen Lynch was unmarried. (She had been divorced for some years.)

43.     Other than Eileen Lynch's Estate, the only potential beneficiary of a recovery in this action is Eileen Lynch's daughter, Michelle Lynch, who is completely dependent on Eileen for her requirements of daily living and for her very survival.

44.     As a result of her mother's death, Michelle Lynch has lost everything: She has lost her mother's support and services from the date of the crash until the date of her mother's death, with interest, and future loss of support and services from the date of her mother's death until the end of Michelle's life. Since the crash, and for the rest of her life, Michelle Lynch has suffered and will continue to suffer the loss of her mother's parental companionship, instruction, and guidance. And the void left by the loss of the most important person in her life has caused and will cause Michelle Lynch mental pain and suffering, mental anguish, and loss of capacity for the enjoyment of life, from the day of the crash, for the rest of Michelle's life. Michelle Lynch has lost and will continue to lose for the rest of her life the amount of her mother's probable net income and the

replacement value of her mother's services. And Michelle Lynch has lost the amount of medical and funeral expenses paid for her mother's medical care and her mother's funeral.

45.     As a result of Eileen Lynch's death, Eileen's estate lost her earnings from the date of the crash until the date of Eileen's death, with interest. The estate has also lost and will continue to lose the prospective net accumulations of the estate, and has lost medical and funeral expenses.

### C. Punitive Damages

46.     Punitive damages are warranted in this case because the Defendant's actions (described in Count 1 of this Complaint), including operating a motorized vessel in violation of marine-safety rules, at a dangerously high speed and in a patently reckless manner, while under the influence of alcohol, and while an innocent passenger was present in the vessel, were wanton, willful, or outrageous.

WHEREFORE Plaintiff demands judgment for damages, including punitive damages, against Defendant, and demands a jury trial.

### Count 3
### Wrongful Death
### Defendant Sun Toy III, LLC's Liability under Respondeat Superior

### A. Facts

47.     The Plaintiff incorporates all of the allegations set forth in Count 1, above.

48.     At the time and place of the events described in Count 1, Defendant Sun Toy III, LLC, employed Defendant Lawrence Casler.

49.     At the time and place of the events described in Count 1, Casler was acting within the scope of his employment with Sun Toy III, LLC.

50.     Because Casler was acting within the scope of his employment with Sun Toy III, LLC, Sun Toy III, LLC, is vicariously liable for Casler's actions, under the doctrine of respondeat superior.

51.    Under the doctrine of respondeat superior, Casler's breach of the duty of care is Sun Toy III, LLC's breach of the duty of care.

### B. Damages

52.    In the crash, Eileen Lynch suffered bodily injury and resulting pain and suffering that caused her to die four days later, on November 25, 2020; the cause of death given in the State of Florida's Certification of Death for Eileen Lynch is "blunt force head trauma" that occurred when "passenger in boat struck pier."

53.    At the time of her death, Eileen Lynch was unmarried. (She had been divorced for some years.)

54.    Other than Eileen Lynch's Estate, the only potential beneficiary of a recovery in this action is Eileen Lynch's daughter, Michelle Lynch, who is completely dependent on Eileen for her requirements of daily living and for her very survival.

55.    As a result of her mother's death, Michelle Lynch has lost everything: She has lost her mother's support and services from the date of the crash until the date of her mother's death, with interest, and future loss of support and services from the date of her mother's death until the end of Michelle's life. Since the crash, and for the rest of her life, Michelle Lynch has suffered and will continue to suffer the loss of her mother's parental companionship, instruction, and guidance. And the void left by the loss of the most important person in her life has caused and will cause Michelle Lynch mental pain and suffering, mental anguish, and loss of capacity for the enjoyment of life, from the day of the crash, for the rest of Michelle's life. Michelle Lynch has lost and will continue to lose for the rest of her life the amount of her mother's probable net income and the replacement value of her mother's services. And Michelle Lynch has lost the amount of medical and funeral expenses paid for her mother's medical care and her mother's funeral.

56.    As a result of Eileen Lynch's death, Eileen's estate lost her earnings from the date of the crash until the date of Eileen's death, with interest. The estate has also

lost and will continue to lose the prospective net accumulations of the estate, and has lost medical and funeral expenses.

## C. Punitive Damages

57.     Punitive damages are warranted in this case because the Defendant's employee's actions (described in Count 1 of this Complaint), including operating a motorized vessel in violation of marine-safety rules, at a dangerously high speed and in a patently reckless manner, while under the influence of alcohol, and while an innocent passenger was present in the vessel, were wanton, willful, or outrageous.

WHEREFORE Plaintiff demands judgment for damages, including punitive damages, against Defendant, and demands a jury trial.

## Count 4
### Action for Declaratory Judgment against Hanover Insurance

58.     This is an action for declaratory judgment and supplemental relief.

59.     Defendant The Hanover Insurance Company issued a yacht policy to Sun Toy III, LLC, and that policy was in force on November 21, 2020, when Eileen Lynch was fatally injured while on Sun Toy's tender.

60.     The policy number is IHW H128974 00. The policy is not attached to this Complaint out of deference to the Defendant insurance company, as the company may prefer that the policy not be made public. But if the Defendant wants the policy attached to this Complaint, the Plaintiff will file the policy as an attachment.

61.     The policy contains a Medical Payments coverage provision with limits of $250,000.

62.     The Medical Payments provision requires The Hanover to pay the necessary medical expenses and funeral costs for bodily injury or death suffered by anyone while on the yacht or the yacht's tender.

63.     Eileen Lynch was killed five months ago, and for the past five months The Hanover has known that Eileen Lynch was transported by helicopter to a hospital

and spent four days in the hospital receiving extremely expensive emergency care. Yet for the past five months, The Hanover has failed to pay any of those expenses or any of Eileen Lynch's funeral expenses, despite knowing full well that it is contractually obligated to pay those expenses.

64.     The Hanover's actions in failing to give Eileen Lynch's family the comfort and assurance of knowing that there was coverage available to pay for Eileen's medical bills and funeral expenses are unconscionable, and amount to bad faith.

65.     The Plaintiff is in doubt about his rights under the policy.

66.     The Plaintiff is obligated to pay his attorneys a reasonable fee for the attorneys' services.

WHEREFORE Plaintiff demands judgment declaring his rights under The Hanover's insurance policy, including (1) that The Hanover must immediately pay all of Eileen Lynch's medical expenses and funeral expenses incurred as a result of this accident, up to the $250,000 limits of the policy's Medical-Payments coverage, and (2) that, pursuant to section 627.428(1), Florida Statutes, The Hanover must pay all of the Plaintiff's attorneys' fees and costs incurred in taking the action necessary to get The Hanover to meet its obligations under its insurance contract. The Plaintiff demands a jury trial.

> Dated: April 29, 2021
>
> Respectfully submitted,
>
> David W. Singer & Associates, P.A.
> By /s/ David W. Singer
> Florida Bar No. 306215
> dsingeresq@aol.com
> Peter G. Walsh
> Florida Bar No. 970417
> pwalsh@1800askfree.com
> 1011 South Federal Highway
> Hollywood, FL 33020
> T: 954-920-1571

10

F: 954-926-5746
Attorneys for the Plaintiff

11